UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: WAYNE D. MEEHEAN AND
REEDA L. MEEHEAN,

    Debtors.
_____/

Bankruptcy Case No. 19-46085-tjt
Chapter 7
HON. THOMAS J. TUCKER

WAYNE D. MEEHEAN and
REEDA L. MEEHEAN,

    Appellants,

vs.

ANDREW R. VARA,
UNITED STATES TRUSTEE,

    Appellee.
_____/

Civil Action No. 20-CV-10380

HON. BERNARD A. FRIEDMAN

**OPINION AND ORDER AFFIRMING ORDER OF THE BANKRUPTCY COURT**

This matter is presently before the Court on debtors' appeal of an order of the Bankruptcy Court granting the motion of the United States Trustee ("Trustee") to dismiss their Chapter 7 bankruptcy petition pursuant to 11 U.S.C. § 707(b)(3)(B). The Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1). The Court reviews a Bankruptcy Court's factual findings for clear error; its conclusions of law are reviewed de novo. *See In re Cook*, 457 F.3d 561, 565 (6th Cir. 2006); *In re Musilli*, 398 B.R. 447, 452-53 (E.D. Mich. 2008). "[T]he ultimate question of whether to dismiss for substantial abuse under § 707(b) is reviewed for abuse of discretion." *In re Behlke*, 358 F.3d 429, 434 (6th Cir. 2004). As the issues have been fully briefed, the Court shall dispense with oral argument and decide the appeal without a hearing pursuant to E.D. Mich. LR 7.1(f)(2).

The debtors in this matter filed their Chapter 7 petition in April 2019. They listed

$5,842 in monthly income ($4,007 in Social Security benefits and $1,835 in pension income) and $4,446 in monthly expenses.¹ Debtors listed $142,871 in secured debt (the mortgage loan on their home) and *$43,100* in unsecured non-priority debt, mainly credit card debt.² They own property, including their home and a boat, worth $157,500.

In July 2019, the trustee moved to dismiss the petition under 11 U.S.C. § 707(b)(3)(B),³ arguing that debtors' "Social Security income should be considered as a factor

---

¹ In Schedule J, debtors listed the following monthly expenses: mortgage payment ($900), home maintenance ($100), utilities ($828), food and housekeeping supplies ($550), clothing/laundry ($120), personal care ($180), medical and dental ($200), transportation ($350), entertainment ($150), contributions and donations ($100), insurance ($237), car lease payments ($631), and pet expenses ($100). These items total $4,446, not $5,746, as debtors claimed. The $1,300 difference appears to be due to the fact that debtors erroneously included "Social Security Income Excluded from CMI [current monthly income]" in this amount. *See* Chapter 7 Schedule J at 3.

² In Schedule E/F, debtors listed the following creditors to whom they owe unsecured debt: ABC Warehouse ($757), Art Van ($1,244), Best Buy ($137), Best Buy ($3,503), Capital One ($10,004), Directions Credit Union ($1,934), Discovery Financial Services ($8,240), Lending Club Corp. ($1,606), Merrick Bank ($3,318), Sears ($2,589), Sears ($3,889), Lowe's ($4,083), The Andersons/SYNCB ($1,142), and Home Depot ($654).

The Court notes that debtors were granted a Chapter 7 discharge in 2008. *See In re Wayne D. Meehean and Reda L. Meehean*, No. 08-47505-tjt (Bankr. E.D. Mich.). In that petition, debtors listed a staggering *$163,870* in unsecured non-priority debt (in addition to an unsecured priority debt in the amount of $19,272 owed to the Internal Revenue Service) owed to the following creditors: American Express ($389), American Express ($9,643), AT&T Universal Card ($25,879), Bank of America ($1,345), Bank of America ($31,408), Chase Card Services ($8,363), Chase Card Services ($20,551), Chase Card Services ($7,749), Chase Card Services ($3,298), Citibank USA ($349), Discover Financial Services ($11,603), Discover Financial Services ($9,951), GE Money Bank ($240), GE Money Bank ($681), GE Money Bank ($1,760), HSBC Bankruptcy ($427), HSBC Bankruptcy Department ($2,395), HSBC Bankruptcy Department ($605), HSBC Bankruptcy Department ($1,305), Target - Bankruptcy Department ($267), US Bank ($11,075), US Bank ($12,663), Vacation Brokers International ($864), Value City Retail Services ($661), and WFNNB Bankruptcy Department ($399).

³ Section 707 states in relevant part:

(b)(1) After notice and a hearing, the court . . . may dismiss a

2

in assessing the Debtors' need for bankruptcy relief." Mot. to Dismiss ¶ 12. The trustee also questioned the reasonableness of the monthly amounts debtors claimed to spend on clothing/laundry, personal care, transportation, and entertainment. *Id.* ¶ 13. The trustee argued that with "some belt tightening," and if their Social Security income is considered, debtors could pay off all their unsecured debt within five years under a Chapter 13 plan. *Id.* ¶¶ 15-16. In short, the trustee's argument is that "[t]he Debtors' attempt to obtain relief under Chapter 7 when they have the ability to pay their creditors with little or no adjustment to their expenses constitutes an abuse of the provisions of Chapter 7." *Id.* ¶ 17. The trustee noted that "[c]ourts are divided on the question of whether social security income should be considered in an

---

case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

\* \* \*

(3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(I) does not arise or is rebutted, the court shall consider–

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

analysis under § 707(b)(3)." Trustee's Mem. of Law at 2.

In opposing this motion, debtors argued that their Chapter 7 petition is not abusive because Social Security income may not be considered in assessing the "totality of the circumstances of the debtor's financial situation" under § 707(b)(3)(B). Among other arguments, debtors pointed to 42 U.S.C. § 407(a), which states that Social Security benefits are not "subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." According to debtors, this means that their Social Security benefits must be disregarded in determining whether they have the ability to pay their debts.

After hearing oral argument, the Bankruptcy Court granted the trustee's motion in a lengthy written opinion. *See In re Meehean*, 611 B.R. 574 (Bankr. E.D. Mich. 2020). The Bankruptcy Court found that

> if the Debtors wanted to do so, they could afford to propose, confirm, and perform a Chapter 13 plan that would pay their unsecured creditors in full in about 41 months. But instead of doing this, the Debtors seek to use Chapter 7 to discharge all of their unsecured debts, keep all of their income, including all of their Social Security income, and pay their unsecured creditors *nothing*.

*Id.* at 579 (emphasis in original). The Bankruptcy Court found, in short, that it would be an abuse to grant the Chapter 7 petition in this matter because debtors have the ability to pay their debts. The Bankruptcy Court cited *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989), for its statement that the debtor's ability to pay his debts "alone may be sufficient to warrant dismissal" under § 707(b)(3). The Bankruptcy Court noted that, if debtors' Social Security benefits are considered, their monthly income ($5,842) exceeds their claimed monthly expenses ($4,446) by

4

$1,396.[4] *In re Meehean*, 611 B.R. at 594. After surveying the conflicting case law on this issue,[5] the Bankruptcy Court determined that debtors' Social Security income may be considered in determining whether they have the ability to pay, i.e., whether they are needy and deserving of a Chapter 7 general discharge. Based on debtors' total income (including their Social

---

[4] The Bankruptcy Court went on to note that

> [l]ease assumption agreements filed recently show that the monthly payments on these leases are $239.18 for the Ford Escape and $535.48 for the Ford F150, for a total of $774.66 per month, and that the Debtors have remained current in their payments on both leases. Using these monthly lease payment amounts, which are higher than the amounts listed by the Debtors in their Schedule J, reduces the Debtors' monthly disposable income from $1,396.43 to $1,252.32.

*In re Meehean*, 611 B.R. at 595 (footnote omitted).

[5] As the Bankruptcy Court noted, some courts have held that Social Security benefits may not be considered in deciding whether a Chapter 7 petition is abusive. *See, e.g., In re Moriarty*, 530 B.R. 637, 645 (Bankr. W.D. Va. 2015) ("[T]he Court disagrees with the *Riggs* decision and rules that the statutory scheme prohibits courts from considering Social Security benefits under the totality of the circumstances test."); and *In re Suttice*, 487 B.R. 245, 254 (Bankr. C.D. Cal. 2013) ("Congress intended social security benefits to be protected from inclusion in a § 707(b)(3)(B) analysis, based upon § 407(a) of the Social Security Act and as shown by the Debtors' social security income being definitively excluded from the means test of § 707(b)(2)."). Other courts have reached the opposite conclusion. *See, e.g., In re Riggs*, 495 B.R. 704, 716 (Bankr. W.D. Va. 2013) ("[T]he plain meaning of 'the totality of [the debtor's] financial situation' is that the receipt of Social Security benefits, clearly a reliable and continuing source of income, is part of that 'totality.'"); *In re Booker*, 399 B.R. 662, 667 (Bankr. W.D. Mo. 2009) ("The Social Security income is part of the totality of the Debtors' financial circumstances. In considering the totality of the Debtors' financial circumstances, the Court is not bound by the definition of current monthly income."); and *In re Calhoun*, 396 B.R. 270, 276 (Bankr. D.S.C. 2008), *aff'd sub nom. Calhoun v. U.S. Tr.*, 650 F.3d 338 (4th Cir. 2011) ("Congress clearly knew how to exclude benefits under the Social Security Act from consideration but did not do so in connection with the § 707(b)(3)(B) totality of the circumstances test.").

Security benefits) and their claimed expenses, the Bankruptcy Court determined that debtors have the ability to fund a Chapter 13 plan and pay 100% of their unsecured debts in 41 months. *Id.* at 595. The Bankruptcy Court concluded that debtors,

> who have no dependents, can do this even while continuing to drive their two nearly-new and rather expensive leased vehicles. These factors "strongly suggest that [the Debtors] can readily repay a substantial dividend to their creditors and that [they] do not need Chapter 7 relief." *See Modiri*, 474 B.R. at 514. The Debtors have not asserted any other circumstances that militate against a finding of abuse. Nor is a finding of abuse negated by any of the other *Krohn* factors noted in Part IV.A above.
>
> The Court finds that granting the Debtors in this case a discharge under Chapter 7 would be an abuse of Chapter 7. So under §§ 707(b)(1) and 707(b)(3), this case must be dismissed, or, if the Debtors so choose, converted to Chapter 13.

*Id.* (footnote omitted). When debtors declined to file a motion to convert to a Chapter 13 proceeding, the Bankruptcy Court dismissed the case.

On appeal, the parties repeat their arguments as to whether a bankruptcy court may consider debtors' Social Security benefits in assessing the "the totality of the circumstances . . . of [their] financial situation" under § 707(b)(3)(B). Having considered the parties' arguments de novo, the Court agrees with the Bankruptcy Court that Social Security benefits may, among other relevant factors, properly be considered in making this determination.

The starting point is the statute itself. Section 707(b)(3)(B) permits the Bankruptcy Court to dismiss a Chapter 7 petition if, in that court's judgment, "the granting of relief would be an abuse of the provisions of this chapter" considering "the totality of the circumstances . . . of the debtor's financial situation." "Totality" is "as inclusive [a term] as it is possible to employ." *In re Riggs*, 495 B.R. 704, 716 (Bankr. W.D. Va. 2013). Congress chose

6

to place only one limit on what the Bankruptcy Court may consider in evaluating a debtor's financial situation in determining whether, under § 707(b)(3)(B), his/her Chapter 7 petition is abusive, namely, "the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions . . . to any qualified religious or charitable entity or organization." Section 707(b)(1). With this single exception, § 707(b)(3)(B) permits inquiry into the entirety of the debtor's "financial situation." This contrasts notably with the inquiry under § 707(b)(2), which presumes abuse if the debtor's "current monthly income" (a term of art that is defined by the Bankruptcy Code to exclude Social Security benefits, s*ee* 11 U.S.C. § 101(10A)(B)(ii)(I)) exceeds a certain amount. If Congress had intended, in like manner, to exclude Social Security benefits from the § 707(b)(3)(B) inquiry, it easily could have done so by adding the words "in light of his current monthly income" at the end of this subsection. Instead, Congress directed the Bankruptcy Court to evaluate abuse based on the "totality" of the debtor's financial situation with no such limitation. This suggests that the Bankruptcy Court should consider all of the debtor's income and expenses, as well as any other factors relevant to his/her financial situation.

The parties agree that the leading Sixth Circuit case addressing § 707(b)(3)(B) is *In re Krohn*, *supra*. That court's comments bear repeating here at length:

> Those courts which have reviewed the legislative history, have generally concluded that, in seeking to curb "substantial abuse," Congress meant to deny Chapter 7 relief to the dishonest or non-needy debtor. *See Walton*, 866 F.2d at 983. In determining whether to apply § 707(b) to an individual debtor, then, a court should ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or instead is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial

7

predicament warrants the discharge of his debts in exchange for liquidation of his assets. *See* 4 Collier, *supra*, ¶ 707.07, at 707-20. Substantial abuse can be predicated upon either lack of honesty or want of need.

It is not possible, of course, to list all the factors that may be relevant to ascertaining a debtor's honesty. Counted among them, however, would surely be the debtor's good faith and candor in filing schedules and other documents, whether he has engaged in "eve of bankruptcy purchases," and whether he was forced into Chapter 7 by unforeseen or catastrophic events.

Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. *Walton*, 866 F.2d at 984-85; *Kelly*, 841 F.2d at 914-15 (collecting cases). That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease. Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

Krohn relies upon *In re Mastroeni*, 56 B.R. 456, 459-60 (Bankr. S.D.N.Y. 1985), in suggesting that a § 707(b) dismissal is foreclosed by his inability to qualify for relief under Chapter 13 since his unsecured debts exceed $100,000. 11 U.S.C. § 109(e). Like the debtor in *Mastroeni*, Krohn does not qualify for relief under Chapter 13 and is not likely to benefit from Chapter 11 relief because he has only minimal assets with which to propose a plan. Accordingly, he argues that, if he is denied Chapter 7 relief, he will be denied the fresh start contemplated by the Code. To be sure, a debtor's eligibility for Chapter 13 relief should be considered in ascertaining his ability to repay his debts out of future earnings. However, inability to qualify under Chapter 13 should not be dispositive of whether there may be a § 707(b) dismissal, since there are other factors to be considered in deciding if a debtor is needy. The anomalous result of saying those whose high unsecured indebtedness renders them ineligible for Chapter

> 13 treatment can always avoid § 707(b) dismissal, would be rewarding outrageous abusers of consumer credit, while denying to those with more moderate consumer debt the benefits of Chapter 7. Indeed, such a bright-line test could be said to encourage debtors to run up unsecured debts in excess of $100,000, thereby avoiding dedication of future earnings to debt retirement under Chapter 13.
>
> Nor are we persuaded by the argument that Krohn is entitled to relief under some provision of the Bankruptcy Code. There is no constitutional right to a bankruptcy discharge, and the "fresh start" provided for by the Code is a creature of congressional policy. *United States v. Kras*, 409 U.S. 434, 446-47, 93 S.Ct. 631, 638-39, 34 L.Ed.2d 626 (1973). Congress, within the limits set by the Constitution, is free to deny access to bankruptcy as it sees fit. *Id.* at 447, 93 S.Ct. at 639. Here, its failure to specifically provide for linkage between Chapters 7 and 13 is evidence that Congress believed there are some circumstances where it would not be equitable to grant a particular debtor a fresh start.

*In re Krohn*, 886 F.2d at 126-27.

In the present case, the Bankruptcy Court correctly applied *In re Krohn* in finding that debtors are not "needy" because their income exceeds their expenses by approximately $1,252 per month. *See supra* note 4. As the court stated in *In re Krohn*, "[t]hat factor alone may be sufficient to warrant dismissal." *Id.* at 126. But the Bankruptcy Court also correctly considered other *In re Krohn* factors, including that debtors have sufficient income to fund a Chapter 13 plan that would pay off all of their unsecured creditors in full in 41 months; that the source of debtors' future income (i.e., Social Security benefits and pensions) is stable; and that debtors have no dependents. The Bankruptcy Court could also have mentioned that the excessiveness of debtors' unsecured debt ($43,100), all of which debtors accumulated since

9

2008[6] when $163,870 in such debt was discharged in their last Chapter 7 proceeding, makes them particularly undeserving of relief in bankruptcy as "outrageous abusers of consumer credit" who are "merely seeking an advantage over [their] creditors." *Id.* at 126-27.

The Court also affirms the Bankruptcy Court's ruling that the inclusion of Social Security benefits in this determination does not violate 42 U.S.C. § 407(a). That statute states:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

The Supreme Court has recognized that this statute "imposes a broad bar against the use of any legal process to reach all social security benefits." *Philpott v. Essex Cty. Welfare Bd.*, 409 U.S. 413, 417 (1973). *Accord In re Buren*, 725 F.2d 1080, 1084 (6th Cir. 1984). But considering the availability of Social Security benefits in determining a debtor's "abuse" under § 707(b)(3)(B) does nothing to subject those benefits to legal process or to the " operation of any bankruptcy or insolvency law." The reason is straightforward: including Social Security income in this assessment does nothing more than assist in determining whether the debtor has the ability to pay. Answering this question in the affirmative does not result in the Social Security benefits being transferred, assigned, executed on, or "subjected to" the operation of any bankruptcy law, but only (when considered with other relevant factors) in the denial of Chapter 7 relief. As the court aptly observed in *Mains v. Foley*, No. 1:11-CV-456, 2012 WL 612006, at *5 (W.D. Mich. Feb. 24, 2012), "[t]he entire focus of section 407 is on a third party's compelled acquisition

---

[6] In fact, debtors indicate in Schedule E/F of their petition that they amassed all of this debt in 2013-2018.

through legal process of someone else's Social Security benefits." *See also In re Buren*, 725 F.2d at 1086 (noting that § 407 "prevents judicial intrusion into the benefit payment process"). Section 407's mandate is not violated by a bankruptcy court's consideration of a debtor's Social Security benefits in determining whether he has sufficient income to pay the debts he seeks to discharge in Chapter 7.

Finally, the Court rejects debtors' argument that dismissal of the Chapter 7 petition was improper because they could not fund a Chapter 13 plan and therefore the Bankruptcy Court's invitation that they convert to Chapter 13 was an "absurd" proposition. As the Sixth Circuit noted in *In re Krohn*, "whether [a Chapter 7 debtor] is eligible for adjustment of his debts through Chapter 13" is a factor that should be considered in assessing his need for a Chapter 7 discharge. 886 F.2d at 126. However, that court also stated that "inability to qualify under Chapter 13 should not be dispositive of whether there may be a § 707(b) dismissal, since there are other factors to be considered in deciding if a debtor is needy" and that Congress' "failure to specifically provide for linkage between Chapters 7 and 13 is evidence that Congress believed there are some circumstances where it would not be equitable to grant a particular debtor a fresh start." *Id.* at 127. Plainly, debtors in this case do not deserve a fresh start in light of their outrageous abuse of consumer credit. Therefore, whether or not they could qualify under Chapter 13 is of marginal relevance to the larger issue of whether their Chapter 7 petition is abusive.

Moreover, the Bankruptcy Court found that debtors would have qualified under Chapter 13 if they had moved to convert their Chapter 7 petition. While this is a hypothetical inquiry, as debtors declined the Bankruptcy Court's invitation to seek such a conversion, it is

11

a factor *In re Krohn* directs courts to consider in weighing a § 707(b)(3)(B) motion to dismiss. Debtors argue that their Chapter 13 plan would have paid their creditors nothing because such a plan is based on debtors' disposable income, which is a function of current monthly income, which excludes Social Security benefits. *See* 11 U.S.C. § 1325(b); 11 U.S.C. § 101(10A).

But as the Bankruptcy Court correctly noted, under 11 U.S.C. § 1325(a)(3) it could have denied confirmation of such a plan for lacking good faith. Just as courts are divided as to whether Social Security income may be considered in determining abuse under § 707(b)(3)(B), they are divided as to whether such income may be considered in determining good faith under § 1325(a)(3). After surveying the conflicting case law on this issue, *see In re Meehean*, 611 B.R. at 588-92, the Bankruptcy Court concluded that Social Security income is properly considered in determining whether a Chapter 13 plan has been proposed in good faith, citing, among other cases, *In re Mains*, 451 B.R. 428, 434 (Bankr. W.D. Mich. 2011) ("[T]his court sees no reason why the Sixth Circuit would not take into consideration all of a debtor's income, including social security benefits, in considering the sincerity of his repayment plan regardless of whether those benefits were included or not under Section 1325(b)."). The Court finds no error in this analysis and affirms the Bankruptcy Court's ruling on this issue. Further, given the totality of the circumstances of debtors' financial situation in the present case, including the income they receive from Social Security benefits, the Bankruptcy Court did not err in concluding that debtors could have proposed a good-faith Chapter 13 plan that paid off all of their unsecured non-priority debt in less than five years, while a plan that proposed to pay none of this debt would have been rejected for lacking good faith.

For the reasons stated above, the Court concludes that the Bankruptcy Court

committed no legal error in including debtors' Social Security income in deciding the trustee's motion to dismiss under § 707(b)(3)(B).  Such income is properly considered, along with other relevant factors, in weighing abuse under this section and, relatedly, "good faith" under § 1325(a)(3).  The Court further concludes that the Bankruptcy Court committed no factual error, and did not abuse its discretion, in finding that debtors have sufficient income to pay their creditors and that granting their petition would be an abuse of the provisions of this chapter. Accordingly, the order of the Bankruptcy Court dismissing debtors' Chapter 7 case is affirmed.

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
Dated:  August 18, 2020       SENIOR UNITED STATES DISTRICT JUDGE
Detroit, Michigan